Approved: _____   ORIGINAL
JESSICA GREENWOOD
Assistant United States Attorney

Before: HONORABLE BARBARA MOSES    18 MAG . 4180
United States Magistrate Judge
Southern District of New York

------------------------------------ X

UNITED STATES OF AMERICA

-v-

LENIN GUZMAN-HIDALGO,
   a/k/a "OMARION NUNEZ," and
ANA VIANELY MOLINA,
   a/k/a "ANA VIANELY CABRERA,"

Defendants.

------------------------------------ X

**SEALED COMPLAINT**

Violation of 18 U.S.C. § 371

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER J. O'ROURKE, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service, and charges as follows:

COUNT ONE
(Conspiracy to Steal Public Funds)

1.   From at least in or about November 2016, up to and including at least in or about July 2017, in the Southern District of New York and elsewhere, LENIN GUZMAN-HIDALGO, a/k/a "OMARION NUNEZ," and ANA VIANELY MOLINA, a/k/a "ANA VIANELY CABRERA," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, theft of government funds, in violation of Title 18, United States Code, Section 641.

2.   It was a part and object of the conspiracy that LENIN GUZMAN-HIDALGO, a/k/a "OMARION NUNEZ," and ANA VIANELY MOLINA, a/k/a "ANA VIANELY CABRERA," the defendants, and others known and unknown, would and did embezzle, steal, purloin, and knowingly convert to their own use and the use of another, and without authority, did sell, convey, and dispose of records, vouchers, moneys, and things of value of the United States and a department and agency thereof, to wit, the Internal Revenue Service ("IRS"), which exceeded $1,000, and did receive, conceal and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted, in violation of Title 18, United States Code, Section 641.

## OVERT ACT

3. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

    a. On or about July 27, 2017, a co-conspirator not named as a defendant herein ("CC-1") removed two United States Treasury Department checks from the United States mail.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a United States Postal Inspector. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offense cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

5. Based on my training and experience in this investigation and prior investigations, as well as my conversations with a Special Agent with the Treasury Inspector General for Tax Administration, I have learned that the United States Treasury Department pays federal tax refunds in the form of checks ("Treasury Checks"), which are mailed to taxpayers through the United States mail or electronically deposited into bank accounts designated by taxpayers. I have also learned that tax refund checks are mailed in distinctive envelopes bearing the name "United States Department of Treasury" on the top left corner. These envelopes have glassine windows through which yellow-colored Treasury checks are visible.

6. Based on my conversations with a Special Agent with the United States Postal Service Office of the Inspector General ("USPS-OIG Agent-1"), I have learned, among other facts, that CC-1 was employed at the Post Office in Rhinebeck, New York (the "Rhinebeck Post Office") beginning in or about May 2016. I have further learned that one or about July 27, 2017, CC-1 was assigned to deliver mail in a postal truck on a postal route in Rhinebeck, New York.

7. Based on my participation in this investigation, I have learned that following CC-1's shift at the Rhinebeck Post Office on or about July 27, 2017, CC-1 was arrested in possession of two envelopes containing Treasury Checks. The two Treasury Checks that were found in CC-1's possession were for $1700 and $800, respectively, and were issued to individual payees other than CC-1.

8. Based on my discussions with CC-1, I have learned the following facts, among others:

2

a. In or about the summer of 2016, CC-1 had a conversation with a woman known to CC-1 as "Vianely." CC-1 told Vianely, in substance and in part, that CC-1 was working at the Post Office. Thereafter, "Vianely" stated to CC-1, in substance and in part, that "Vianely" and her significant other "Lenny" had a business involving tax refund checks and that CC-1 would get paid if CC-1 took checks from the mail.

b. Approximately two months after this conversation, "Vianely" called CC-1 and stated, in substance and in part, that they should do "this" and that CC-1 could make money. CC-1 agreed. "Vianely" described the types of checks that CC-1 should steal, namely, checks that were green, yellow, or white in color, which would say "Taxation" or "Finance" on them.

c. CC-1 began stealing checks from the mail for "Vianely" and "Lenny." "Vianely" would call CC-1 periodically to ask whether CC-1 had gotten any checks. CC-1 estimates that CC-1 stole at least approximately 25 checks for "Vianely" and "Lenny" between in or about November 2016 and in or about July 2017. CC-1 would deliver the checks to "Vianely" or "Lenny" and was paid by them in cash or by direct deposit to CC-1's bank account. "Vianely" told CC-1, in substance and in part, that she and "Lenny" had people who could cash the checks for them.

d. In or about July 2017, after CC-1 delivered approximately three stolen checks to "Lenny," CC-1 went with "Lenny" to a location in the Bronx, New York. CC-1 observed that, in addition to the checks that CC-1 had given "Lenny," "Lenny" had additional checks in similar white envelopes. After "Lenny" and CC-1 arrived at the location, "Lenny" exited the vehicle in which they were riding and left to meet a third party. CC-1 understood that "Lenny" was meeting a third party to sell the stolen tax refund checks.

e. CC-1 identified the address of a building where CC-1 believed that "Vianely" and "Lenny" lived in Yonkers, New York (the "Yonkers Address"), though CC-1 stated that CC-1 had never been inside their apartment. CC-1 also provided phone numbers and physical descriptions of "Vianely" and "Lenny," and identified photographs of "Vianely" and "Lenny" on Facebook.

9. Based on my review of law enforcement databases, I have learned that the phone number that CC-1 identified as belonging to "Vianely" was registered to an apartment in a building that is adjoined to the Yonkers Address (the "Yonkers Apartment"). In other words, the Yonkers Apartment can be accessed through the building at the Yonkers Address identified by CC-1 or through the adjoining building where the Yonkers Apartment is located.

10. Based on my review of law enforcement databases, I have learned that the phone number that CC-1 identified as belonging to "Lenny" is registered to LENIN GUZMAN-HIDALGO, a/k/a "OMARION NUNEZ," at the Yonkers Apartment.

11. Based on my review of law enforcement databases, I have learned that the Yonkers Apartment is associated with LENIN GUZMAN-HIDALGO, a/k/a "OMARION NUNEZ," and ANA VIANELY MOLINA, a/k/a "ANA VIANELY CABRERA," the defendants.

3

12. Based on my review of searches conducted of the social security number registered to ANA VIANELY MOLINA, a/k/a "ANA VIANELY CABRERA, the defendant, in law enforcement databases, I have learned that MOLINA reported earning income at a location that CC-1 identified as being a location where "Vianely" worked.

13. Based on my review of bank records and taxpayer complaints, I have learned that, between in or about July 2016 and in or about November 2017, numerous taxpayers living at addresses covered by the Post Office where CC-1 worked reported that their legitimate tax refund checks were not delivered. I have further learned that certain of these checks were deposited into bank accounts in the Bronx, New York.

WHEREFORE, deponent respectfully requests that warrants issue for the arrests of LENIN GUZMAN-HIDALGO, a/k/a "OMARION NUNEZ," and VIANELY MOLINA, a/k/a "ANA VIANELY CABRERA," the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

CHRISTOPHER J. O'ROURKE
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
16th day of May, 2018

HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK